UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:05cv-109-R

MERCY HEALTH PARTNERS-
LOURDES, INC. PLAINTIFF

v.

DENNIS W. HASTINGS and
CHIP NIX DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the Court on Defendants Dennis W. Hastings' ("Hastings") and Chip Nix's ("Nix") Motion for Summary Judgment (Docket #27). The Plaintiff, Mercy Health Partners-Lourdes, Inc. ("Lourdes") has submitted a revised response (Docket #42), and the Defendants have replied to Lourdes' response (Docket #45). This matter is now ripe for adjudication. For the following reasons, the Defendants' motion for summary judgment is **DENIED** at this time.

**BACKGROUND**

This matter concerns claims of fraud by omission and a violation of KRS 514.070. Hastings is the president and sole owner of KDA Holdings, Inc. ("KDA"), a design development and construction management services firm. Nix serves as the Senior Vice President of the company. KDA entered into a Project Agreement ("Agreement") with Lourdes on August 15, 2002, for the design, project management and the construction of the Marshall Nemer Pavilion ("Project") located at Lourdes' campus in Paducah, Kentucky. The Agreement provided for monthly payments made to KDA from Lourdes, which included fees to be paid to subcontractors, based on a detailed break-down of what was needed for each stage of the Project. With each payment that was submitted by Lourdes to KDA, KDA provided a pay application,

which was designed by the American Institute of Architects ("AIA"). Both Hastings and Nix either individually or collectively signed the majority of the pay applications. For the first sixteen (16) of the twenty-seven (27) pay applications, KDA provided Lourdes with an AIA pay application, which stated in pertinent part:

> [t]he undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief, the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that the current payment shown herein is now due.

Beginning with pay application number seventeen (17), the language of the pay application was changed by KDA. This was never specifically brought to the attention of Lourdes by KDA when the change took place, and KDA has not indicated why it changed the language. For the eleven (11) remaining pay applications, the language stated, in pertinent part:

> [t]he undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief, the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, *and that upon receipt of this Certificate for Payment, the Contractor intends to pay outstanding bills for the Certificate of Payment*. (emphasis added).

The altered pay application was not approved or designed by the AIA. At the time KDA altered the pay application, which was executed by Nix, Lourdes claims it had paid KDA $3,362,806 more than KDA had paid out to its contractual commitments.

In the autumn of 2002, cost overruns on the construction began. At no point when Lourdes was paying the monthly installments to KDA did Hastings and Nix, or anybody else from KDA, inform Lourdes of these overruns. However, the overruns did not take place until after the parties entered into the Agreement, and KDA had a $4 million cost cushion for expenses. Hastings and Nix both testified that they did not know of the cost overruns until the

very end of the project; however, both men testified that monthly cost reports were generated tracking the project costs and that each of them viewed these reports.

In December 2004, after the completion of the Project, Lourdes was informed by the subcontractors on the project that KDA owed vendors $1,810,302.89. As a result, numerous liens were filed or threatened to be filed against the hospital property. Lourdes paid $1.3 million to settle these claims. Total subcontractor costs totaled $12,045,490. KDA received $11,075,917 from Lourdes for subcontractor costs, but paid only $10,245,490 to subcontractors. Lourdes asserts that this means KDA received $830,447 more than it paid to subcontractors.[1]

Lourdes contends that Hastings and Nix, as individual officers of KDA, but in a non-corporate capacity, committed fraud by omission and/or concealment against Lourdes, and violated KRS 514.070. In their motion for summary judgment, the Defendants argue that Lourdes cannot establish a claim for fraud pursuant to individual liability and it cannot show that the contact with Lourdes induced them into the Agreement as the Agreement was signed prior to the overruns. The Defendants further contend that they did not have a duty to disclose to Lourdes the cost overruns or the change in the pay application form because they did not have a fiduciary relationship with Lourdes. Lastly, the Defendants assert that they did not violate KRS 514.070 because Lourdes has failed to show the personal liability of Hastings and Nix for the failure of KDA to pay its subcontractors.

**STANDARD**

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can

[1]There is a dispute between the parties as to the exact figure.

establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence. To support this position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tomkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

**DISCUSSION**

There are four (4) matters that the Defendants have argued in their motion for summary judgment. The Defendants first assert that officers of a corporation cannot be held liable individually when contracting as an agent of a corporation within the scope of their employment. Second, the Defendants contend that Lourdes cannot establish a claim for fraud either by misrepresentation or omission. The Defendants also argue that the Plaintiff cannot show that they violated KRS 514.070. Lastly, the Defendants claim that the Plaintiff needs expert witnesses to prove its claims. The Court will address each one of these matters separately.

***Liability Against Hastings and Nix in their Individual Capacity***

Hastings and Nix argue that they cannot be individually liable for contracting with Lourdes because they were acting as agents of the corporation within the scope of their authority at the time they signed the pay agreements. Kentucky has adopted the Restatement 2nd of Agency Law in determining the circumstances when a court may "pierce the corporate veil" against a shareholder or officer of a corporation. "[A]n officer, director or shareholder, when acting as an agent of the corporation, is also protected from personal liability for making a contract where acting within his authority to bind the principal. *Restatement (Second) of Agency, Section 328* (1958)." *Smith v. Isaacs*, 777 S.W.2d 912, 913 (Ky. 1989). However, *Restatement (Second) of Agency, Section 343* states:

> [a]n agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal, except where he is exercising a privilege of the principal, or a privilege held by him for the protection of the principal's interests, or where the principal owes no duty or less than the normal duty of care to the person harmed.

As such, an officer of a corporation can be held liable in his/her capacity for tortious conduct, including fraud. *Id.* at 914; *See Restatement (Third) of Agency Section 7.01* (2004). Accordingly,

Hastings and Nix may be held individually liable for any fraudulent acts committed by them upon the Plaintiff.

***Fraud Claim***

The Defendants assert that the Plaintiff cannot establish a fraud claim under either a standard of misrepresentation or omission. Lourdes contends that it has set forth a sufficient claim for fraud and that issues of fact exist that preclude summary judgment. Lourdes also argues that it does not make its fraud claim against the Defendants under a misrepresentation standard, but rather under a standard of fraud by omission.

In Kentucky, to set forth a claim of fraud by omission, the Plaintiff must demonstrate that: 1) the defendant had a duty to disclose a material fact; 2) the defendant failed to disclose that material fact; 3) the defendant's failure to disclose the material fact induced the Plaintiff to act; and 4) the Plaintiff suffered damages. *Smith v. General Motors Corp.*, 979 S.W.2d 127, 129 (Ky. App. 1998)(citing *Faulkner Drilling Co., Inc. v. Gross*, 943 S.W.2d 634 (Ky. App. 1997)). In proving these elements, the Kentucky Supreme Court has held that "[f]raud may be established by evidence which is wholly circumstantial." *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky.1999).

In looking at the elements of fraud by omission, "[a] duty to disclose may arise from a fiduciary relationship, from a partial disclosure of information, or from particular circumstances such as where one party to a contract has superior knowledge and is relied upon to disclose same." *Smith*, 979 S.W.2d at 129 (citing *Bryant v. Troutman*, 287 S.W.2d 918 (Ky. 1956); *Dennis v. Thomson*, 240 Ky. 727, 43 S.W.2d 18 (1931)). The Kentucky Supreme Court has held that:

> mere silence with respect to something related to a transaction is not necessarily misrepresentation and does not itself constitute fraud. However, it is otherwise when the circumstances surrounding a transaction impose a duty or obligation upon one of the parties to disclose all the material facts known to him and not known to the other party. The suppression or concealment of the truth under such circumstances may constitute a means of committing a fraud as well as misrepresentation openly made.

*Hall v. Carter*, 324 S.W.2d 410, 412 (Ky. 1959). A partial disclosure by a party in a transaction puts that party under a duty to tell everything once he/she discloses some information on the matter in question. *Dennis*, 43 S.W.2d at 23. "Where one party to a contract knows that the other relies on him to disclose all facts material to execution thereof, the duty rests on him not to conceal anything material to the bargain, and one causing damage by concealment must assume the entire responsibility." *Gross*, 943 S.W.2d at 638. For purposes of a fraud by omission claim, a material fact is one that is "is likely to affect the conduct of a reasonable man and be an inducement of the contract." *Id.* (citing *McHargue v. Fayette Coal & Feed Co.*, Ky., 283 S.W.2d 170 (1955)).

In the instant matter, the Court must determine whether or not Hastings and Nix had a duty to disclose the cost overruns and the new pay agreement transaction forms to Lourdes. Though a fiduciary relationship did not exist between the parties, Lourdes argues that based on partial disclosure and the circumstances of the arrangement between the parties the Defendants had a duty to disclose the cost overruns and the new pay agreements.

**1. Cost Overruns**

In looking at the cost overruns, the Defendants accurately point out that KDA had a $4 million cushion on the Agreement for profit and overhead. However, a $4 million margin does not necessarily extinguish a duty to disclose on the part of the Defendants. Though the Plaintiff

cannot point out any evidence that shows the Defendants made any partial disclosure to Lourdes at any time during the pay agreement period, the circumstances of the arrangement made the Defendants the party who had superior knowledge. Hastings and Nix both admitted that they reviewed the monthly reports on their budget and costs. Though they claim they do not know what happened to the funds, a claim for fraud may be based on circumstantial evidence, and their admission to looking over these monthly reports suffices to meet that standard that they knew the cost overruns existed. As mentioned *supra*, a material fact is that which is likely to affect the conduct of a reasonable person in a particular situation and which induces that person to enter into a contract because he/she does not have knowledge of such fact. Here, the information concerning the cost overruns could have possibly influenced the decision of Lourdes to continue making payments. As such, a finder of fact could determine that the knowledge of cost overruns was a material fact.

In looking at the remainder of the elements, the Defendants admit that they did not disclose this information to the Plaintiff. Further, a finder of fact could determine that there was an omission of a material fact to Lourdes that induced it to continue making payments to the Defendants because the Plaintiff believed the Project was running on its agreed upon budget. Lastly, there is sufficient evidence for the jury to find that Lourdes suffered an injury. At this time, the Court cannot say judgment should issue as a matter of law. There appears to be factual issues. The Court will be better informed to address these issues at the close of the evidence.

**2. Pay Agreement Form**

Though parties who a sign a contract generally have a duty to read the documents before

signing them and cannot argue ignorance as a defense, the instant matter does not necessarily fit into that mold. The parties initially used the AIA approved G702 form as part of the pay agreement, using that form when Lourdes made its first sixteen (16) pay agreements to the Defendants. However, beginning with the seventeenth form, the Defendants changed the language without informing the Plaintiff. Further, the Defendants kept the label as a G702 form, knowing that the particular form used for the remaining eleven (11) pay agreements was not the AIA form that had been used by the parties. The new language of the amended pay agreement did not *require* the Defendants to pay its subcontractors, but instead stated that the Defendants *intended* to do so upon receipt of the funds. The Defendants have not offered any reason why this change was made, nor have the Defendants stated why they did not inform Lourdes of this change. The Plaintiff claims that this charge is at the least, uncontested evidence to support its claim of fraud, or evidence that the Defendants had knowledge of the cost overruns and therefore changed the language of the form.

In looking at whether or not the Defendants had a duty to disclose this knowledge to the Plaintiff, the circumstances of this particular instance left Hastings and Nix as the party with superior knowledge because they knew the pay agreement form had been changed. The information concerning the altered pay agreements could have possibly influenced the decision of Lourdes to continue making payments. The manner and timing of the change are relevant to the Plaintiff's claim of fraud. Regardless of whether this is a separate act of fraud or circumstantial evidence of fraud, it still supports the claim asserted by the Plaintiff.

***KRS 514.070***

KRS 514.070, part of the Kentucky Penal Code, states in pertinent part:

> (1) A person is guilty of theft by failure to make required disposition of property received when:
> (a) He obtains property upon agreement or subject to a known legal obligation to make specified payment or other disposition whether from such property or its proceeds or from his own property to be reserved in equivalent amount; and
> (b) He intentionally deals with the property as his own and fails to make the required payment or disposition.

In *Reeder*, the Supreme Court of Kentucky held that KRS 446.070 "creates a private right of action for the violation of any statute so long as the plaintiff belongs to the class intended to be protected by the statute." *State Farm Mutual Automobile Insurance Company v. Reeder*, 763 S.W.2d 116, 118 (Ky.1988). The Plaintiff cites the Kentucky Supreme Court case of *Butts v. Commonwealth*, 581 S.W.2d 565 (Ky. 1979) in support of its argument that the Defendants violated KRS 514.070 in their individual capacity as officers of KDA. The Defendants contend that neither Hastings nor Nix personally diverted funds received from Lourdes, and that Lourdes has not offered in any evidence to support their individual liability under KRS 514.070.

The Court's initial reaction is to grant this motion as to alleged KRS 514.070 violation. However, the motion and the response have left some doubt in the Court's mind. The Court is unable to state with complete confidence that there is not an issue of material fact at this time. Leaving this claim in at this time will not significantly alter the proof at trial. The viability of the claim will be easier to determine at the close of the evidence.

***Expert Testimony***

In its motion for summary judgment the Defendants assert that the Plaintiff needs a qualified expert to testify to the accounting matters dealt with by the parties. The Defendants have not cited any authority in Kentucky to support this assertion. At this time, the Court is unable to state with certainty whether relevant expert testimony is necessary to sustain the

Plaintiff's claim. This matter can best be ascertained at the close of the evidence.

**CONCLUSION**

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **DENIED** at this time.

An appropriate order shall issue.

June 29, 2006

**Thomas B. Russell, Judge**
**United States District Court**